STATE *v.* SAMUEL W. ELLIOTT, JR.

*(July* 5, 1939.)

LAYTON, C. J., RODNEY and SPEAKMAN, J. J., sitting.

*James R. Morford,* Attorney-General, for the State.

*Frederick P. Whitney* for the defendant.

Court of Oyer and Terminer for Sussex County, Manslaughter, No. 14, June Term, 1939.

LAYTON, C. J., charged the jury, in part, as follows:

Samuel W. Elliott, Jr., the defendant, is charged in the indictment before you with the crime of manslaughter of the involuntary kind as a result of the death of Jessie Ennis Lingo, a passenger in an automobile with which the automobile driven by the defendant collided.

Manslaughter is of two kinds, voluntary and involuntary. The more familiar kind of manslaughter is that which is called voluntary. This occurs where one person

kills another unlawfully but without malice as, for example, in a gust of passion aroused by adequate provocation. In such case the killing is intentional and is called voluntary manslaughter. With this kind of manslaughter you are not concerned.

■■ Involuntary manslaughter, on the other hand, is where the killing is not intentional; and this form of manslaughter occurs where a person in committing an unlawful act not felonious or tending to do great bodily harm, or in committing a lawful act but without proper care and caution, without intention or design, kills another. Dependent on the circumstances of the case, even though a person may have been engaged in the performance of an act lawful in itself, his conduct may have been so negligent with respect to some duty imposed upon him by the law generally, or by statute specifically, for the preservation of the life or safety of other persons, as to be regarded as unlawful conduct and punishable criminally.

■■ Negligence, generally speaking, is the failure to exercise that degree of care and caution in a given situation which a reasonably prudent person would exercise in a like situation. But while a mere negligent act of commission or omission causing injury or death may be the basis for a civil action of damages, not all acts of negligence resulting in injury or death are punished criminally. To be punished criminally the negligent conduct must be something more than is required to hold one responsible in a civil action. Courts have said that to be punished as a crime the negligence must be culpable or gross, or that the conduct of the accused person must have been such as to evidence a conscious indifference to consequences, or to show a reckless disregard for the life and safety of others, or to be incompatible with human life and safety. These expressions, when examined, mean only that to be punished criminally, the conduct of the accused person must have been

such as was likely to cause great bodily harm or death to another reasonably within its range.

Driving an automobile on a public highway is a lawful act. Mere negligent driving, without more, is not punished criminally; but where the conduct of the driver is such as to evidence a reckless disregard for the life and safety of others, it is such negligence as is subject to criminal prosecution and punishment.

The State has offered evidence tending to show that the night of October 10, 1938, was clear and bright, the moon being at full or nearly so, and objects on the public highways being easily discernible; that shortly before 10 o'clock of that night George Torbert and Robert Wilkins were proceeding in a Plymouth automobile westerly on the public highway leading from Lewes to Georgetown in Georgetown Hundred in this county; that just west of a place called Ennis Hill a bearing of the automobile burned out compelling the stoppage of their car; that the car was stopped on the proper side of the road, partly on and partly off the concrete portion of the highway, leaving ample room for any vehicle proceeding in the same direction to pass to the left; that from the point where the automobile was stopped to the crest of the rise or hill to the east the distance was about 1200 feet and the road was perfectly straight; that Wilkins got out of the car for the purpose of asking help from passersby; that shortly after a Chevrolet car, in which Mr. and Mrs. Coulter and the deceased Jessie Ennis Lingo, were riding, came along and stopped immediately in the rear of the Plymouth automobile, facing in the same direction; that while the two cars were in this position the defendant, operating a Nash automobile in a westerly direction at great speed, drove into the rear of the Chevrolet car; and that as a result of the collision, Jessie Ennis Lingo was thrown from the car in which she was riding and suffered injuries from which she died the next day.

The State contends, therefore, that the defendant is guilty of involuntary manslaughter for the reason that he operated his automobile in a manner incompatible with human life and safety. The indictment contains several counts or charges. Some of them were stricken from the indictment as being insufficient; another is not for your consideration for the reason that the proof failed to support its allegations.

Count A charges that the defendant was feloniously careless, reckless and negligent in the operation of his automobile in that he drove it without keeping a proper lookout for others lawfully using the highway.

It is well settled that an operator of a motor vehicle on a public highway shall maintain constantly a proper lookout for the presence of other vehicles and persons lawfully thereon. The duty to look implies the duty to see that which is in plain sight unless some reasonable explanation is offered. It is negligence not to see what is plainly visible where there is nothing to obscure the vision of a driver, for he is not only required to look, but he is required to exercise his sense of sight in such careful and intelligent manner as will enable him to see things which a person in the exercise of ordinary care and caution would see under like circumstances; and if the failure of the driver to see that which is plainly visible evidences such disregard of his duty as is likely to cause injury or death to another on the highway, such conduct is unlawful and is punishable criminally.

If you shall find from the evidence beyond a reasonable doubt that the defendant in operating his automobile immediately prior to the collision was not maintaining a proper lookout for the presence of other automobiles on the highway, and that his conduct in this particular, considering the character of the roadway, the brightness of

the night, the speed at which the defendant's car was being driven and the position of the Coulter car thereon, was such as to evidence a reckless disregard for the life and safety of others lawfully on the highway, and that as a proximate result of such conduct the car in which the deceased was riding was struck by the defendant's automobile, thereby causing her injuries from which she died, your verdict should be guilty.

 Count B of the indictment charges that the defendant operated his automobile without keeping it under proper control. An automobile is a machine of great power and speed, and the law is well settled that a person operating an automobile on a public highway shall use that degree of care and caution which the particular circumstances demand in order that others lawfully on the highway may not be injured or killed. Control means management or government, and the phrase, "under proper control," as applied to the operation of a motor vehicle on a public highway, means operating it at such speed and with such attention to its mechanism and power as will enable the driver to bring it to a stop with a reasonable degree of quickness or within a reasonable distance, or to guide it safely by objects on the highway, this dependent always on the existing circumstances and the likelihood of danger to others on the highway. Control over a motor vehicle is largely dependent on the speed at which it is being driven. The failure to exercise proper control is negligence, and it may be such negligence as is punishable criminally if the driver's conduct is such as would evidence a reckless disregard for the life and safety of others lawfully on the highway.

 If you shall find from the evidence beyond a reasonable doubt that the defendant in operating his automobile at the time and place alleged was not keeping it under proper control, as that phrase has been explained to you,

and that his conduct in this particular was such as to evidence a reckless disregard for the life and safety of others lawfully using the highway, considering the character of the highway before and at the place of collision, the position of the Coulter car, the conditions of visibility existing and the speed at which the defendant was driving his car, and that as a proximate result the automobile in which the deceased was riding was struck by the defendant's automobile as a result of which she suffered injuries from which she died, your verdict should be guilty.

The defendant contends that he was guilty of no negligence; that he was driving at a speed of from 40 to 50 miles an hour; that he saw no red light or white light on the road ahead; that he did not see the Coulter automobile until he was almost upon it; and that he applied the brakes, and swerved to the left, but was unable to avoid the collision.

If you shall be satisfied from the evidence that the defendant was not negligent at all in the operation of his automobile, or, if negligent, his conduct in any of the particulars charged in the indictment considering all of the circumstances was not such as to evidence a reckless disregard for the life and safety of others lawfully on the highway, your verdict should be not guilty.