Joseph A. BARLOW, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

Supreme Court of Delaware.

June 10, 1971.

Bernard Balick, Asst. Public Defender, Wilmington, for appellant.

Richard R. Wier, Jr. and Peter M. Sieglaff, Deputy Attys. Gen., Wilmington, for appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

CAREY, Justice:

This is an appeal by appellant Joseph A. Barlow, who was convicted and sentenced in Superior Court for possession of a dangerous drug, marijuana, with intent to sell.

The facts are briefly as follows: Around 1:00 p. m. on September 5, 1969, the Narcotic and Dangerous Drug Unit of the State Police received information from reliable sources that Barlow, along with several bricks of marijuana, was at the residence of one Crosby. They also learned that the bricks were wrapped in red cellophane, stored in a square, hard, brown steamer trunk, and were to be moved on the day in question, possibly in a Pontiac GTO. The police began surveillance of the Crosby residence shortly after 1:00 o'clock in the afternoon. During the course of the afternoon, the police observed many people visiting the house for short intervals of time, but saw no movement of suitcases or trunks.

Then, at approximately 7:55 p. m., Crosby, a co-defendant at the trial below, assisted by another person, put a steamer trunk into the back seat of a Karmen Ghia parked in front of the premises and returned to the house. At 8:35 p. m., a Pontiac GTO arrived and parked near the house and the driver went inside; the police learned that this car was driven by Barbara Munda. At 8:58 p. m., Crosby and another person moved the steamer trunk from the rear of the Karmen Ghia to the rear seat of the GTO. Between 9:00 and 9:30 p. m., information was relayed to the surveillance unit that an informant had observed a sale of marijuana in the house. At 9:45 p. m., Crosby and another person again moved the steamer trunk from the rear seat of the GTO to the trunk and placed a suitcase on top of the steamer trunk. At 9:52 p. m., Barbara Munda drove off in the GTO, with appellant Barlow in the right front seat and two other men in the rear seat.

Two stake-out police cars and one car from the surveillance unit converged on the GTO after it left the area of the Crosby residence. Everyone was ordered from the car and soon afterwards, appellant Barlow was placed under arrest. One of the police went directly to Barbara Munda, whom he knew, and requested permission to search the car. When she asked if he had a search warrant, he replied that he did not, but it would not take long to get one. Miss Munda allowed the police to search the car and they removed the steamer trunk containing a large quantity of marijuana. As the steamer trunk was removed, appellant Barlow made at least one statement to the effect that the "stuff" was all his and the others had nothing to do with it.

■ One of the objections raised by appellant is that the search and seizure were invalid since consent was not freely and voluntarily given by Miss Munda. Appellant argues that there was coercion here and where there is coercion, there cannot be consent. We agree with the trial Judge that the consent by Miss Munda to the search was voluntary and therefore the search and the subsequent seizure of the steamer trunk and its contents were valid. Although Miss Munda was suddenly confronted by several police officers, testimony shows that she remained calm and asked about the existence of a search warrant. The officer replied honestly to her question and she permitted the search. We find that she knowingly and intelligently consented to the search of her car and the evidence obtained during that search is admissible. Thurman v. State (Tenn.App.), 455 S.W.2d 177 (1970).

■ Appellant Barlow also contends that his arrest was illegal and that statements he made during this illegal arrest were inadmissible. Specifically, he argues that there was no probable cause for his

arrest. We think that the reports of the police received from informers, the prior personal knowledge of the officers concerning the appellant, and the discovery of the marijuana in the trunk of the GTO provide probable cause for the arrest of appellant. Since we find the arrest was legal, the incriminating statements made by him after the arrest were also properly admitted into evidence. We note also that his most damaging remark that all the "stuff" was his was made spontaneously and not in answer to any question asked by the police. Chambers v. Maroney, 399 U. S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

■ Finally, appellant argues that the Court below erred in denying his request for a mistrial because of attendance by the foreman of the jury at a lecture on drug abuse given by the prosecution's sole witness during an overnight recess in the trial. There was no personal conversation between the two. This incident was called to the Court's attention by the State the morning after the lecture, when the policeman involved became certain that he recognized the jury foreman as having attended. We find there was no reversible error in denying the motion for mistrial in view of the rejection by all the defense counsel of the Court's offer to interrogate the juror concerning possible prejudice arising from his attendance at the lecture.

■ However, in passing, we suggest that although no reversible error occurred, the better solution would have been to replace the juror in controversy with an alternate juror. We also suggest that jurors should be more circumspect in their conduct during the trial term at which they are sitting, and to insure this, perhaps an addendum to the Juror's Handbook is needed.

We affirm the decision of the Court below.